UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LINDA VAN ZUTPHEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 15-cv-02429-SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS ORDER**<br><br>Re: Dkt. Nos. 15, 16 |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record ("AR"), the Court hereby GRANTS plaintiff's motion, DENIES defendant's motion, and REMANDS this matter for further administrative proceedings consistent with this Order.

**BACKGROUND**

By the time of the administrative hearing, plaintiff Jane Linda Van Zutphen was a fifty-seven-year-old woman with a high school education. AR 27. Her work experience includes employment as a part-time ticket seller for the Giants. *Id.* at 1040. Plaintiff's disability traces back to "five automobile accidents and . . . a work injury in 1993." *Id.* 136. According to a Function Report that plaintiff completed on March 19, 1997, she sustained neck, back, and leg injuries through "several consecutive automobile accidents." *Id*. at 119. Her back and leg injuries were aggravated by her then employer who refused to decrease her work hours or workload. *Id*. In 1997, she reported having a "back and neck problem which radiates pain through the back and

legs." *Id*. at 78. Plaintiff reported at that time that she was "unable to stand, sit, walk, lift, [or] bend without being in pain," which prevented her from working. *Id*.

On March 11, 1999, plaintiff was found disabled as of August 26, 1994, and entitled to disability insurance benefits under Title II of the Social Security Act, due to "severe mental depression and physical pain."[1] *Id*. at 22, 491. The Administrative Law Judge ("ALJ") found that plaintiff met Medical Listing 12.04 of 20 C.F.R. Part 404, Appendix 1 to Subpart P. *Id*. at 491. On October 30, 2006, the Social Security Administration ("SSA") found her disability to be continuing. *Id*. at 496, 506. Plaintiff's disability benefits continued until July 2009, when her benefits ceased due to work activity. *Id*. at 22, 671-72.

On October 26, 2011, plaintiff filed for expedited reinstatement of benefits and received provisional benefits. *Id*. at 512, 514. On March 5, 2012, the SSA determined that plaintiff was no longer disabled as of March 1, 2012. *Id*. at 497. Plaintiff filed for reconsideration and on July 16, 2012, the SSA found that her disability had ceased as of October 1, 2011. *Id.* at 498.

Plaintiff requested a hearing before an Administrative Law Judge. *Id*. at 537. Plaintiff's hearing before ALJ Michael Blume was held on July 23, 2014. *Id*. at 22. The ALJ issued a decision on September 25, 2014, finding that plaintiff was not disabled as of July 1, 2009. *Id.* at 19, 22.

On April 13, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id*. at 12. Plaintiff then filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Dkt. No. 1, Compl. ¶ 3. Plaintiff, who is represented by counsel, has moved for summary judgment and asks this Court to reverse and remand the ALJ's decision for rehearing, with payment of benefits pending rehearing. Dkt. No. 15, Pl.'s Mot. at 1, 15. Plaintiff seeks to have the Appeals Council's decision vacated and her benefits reinstated, and seeks remand of this matter for a new hearing. *Id*. at 1. Defendant has filed a cross-motion for

---

[1] At the same time, plaintiff applied for and was found eligible for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. However, the SSI application is not part of the administrative record in this case, and those benefits are not the subject of the present appeal.

1  summary judgment, arguing that the ALJ's decision was supported by substantial evidence and
2  opposing plaintiff's request that the Court award benefits. Dkt. No. 16, Def.'s Cross-Mot. at 9-10,
3  12. Plaintiff filed a response to defendant's cross-motion. Dkt. No. 19, Pl.'s Resp.

**LEGAL STANDARD**

**I.     Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). A court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

**II.    Continuing Disability Review**

"Once a claimant has been found to be disabled, . . . a presumption of continuing disability arises in her favor." *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983)); *see also Medina v. Colvin*, No. 14-CV-01967-DMR, 2015 WL 5448498, at *12 (N.D. Cal. Aug. 21, 2015) (discussing the Ninth Circuit's reaffirming this presumption after 1984 amendments to the Social Security Act). The Commissioner periodically reviews whether the claimant continues to be entitled to benefits.

At continuing disability review, an ALJ conducts an eight-step inquiry:

(1) Is the claimant presently engaging in substantial gainful activity? If so, the disability will be found to have ended. If the claimant is not engaging in substantial gainful activity, then the analysis proceeds to step two. 20 C.F.R. § 404.1594(f)(1).

(2) Does the claimant have an impairment or combination of impairments that meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings")? If a Listing is met, the claimant continues to be disabled, and the evaluation stops. If not, the analysis advances to step three. *Id.* § 404.1594(f)(2).

(3) Has there been medical improvement, as defined in 20 C.F.R. § 404.1594(b)(1)? *Id.* § 404.1594(f)(3). That paragraph states:

Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

*Id.* § 404.1594(b)(1) If medical improvement has occurred, the analysis advances to step four. If medical improvement has not occurred, the analysis skips to step five. *Id.* § 404.1594(f)(3).

(4) Is the medical improvement related to the claimant's ability to work? If so, the analysis skips to step six. If the medical improvement is not related to the claimant's ability to work, the analysis advances to step five. *Id.* § 404.1594(f)(4).

(5) Do any of the exceptions to medical improvement apply? If none of the exceptions apply, the claimant will be found to still be disabled. If an exception applies, the analysis advances to step six. *Id.* § 404.1594(f)(5).

4

(6) Are the claimant's current impairments in combination severe? In other words, do the claimant's current impairments in combination significantly limit her physical or mental abilities to do basic work activities? If not, the claimant's disability will be found to have ended. If the claimant's current impairments in combination are severe, the analysis advances to step seven. *Id.* § 404.1594(f)(6) (citing § 404.1521).

(7) What is the claimant's current ability to do substantial gainful activity in accordance with 20 C.F.R. § 404.1560? At this step, the ALJ assesses residual functional capacity based on all the current impairments. *Id.* § 404.1594(f)(7). The ALJ considers whether the claimant can still do work that she has done in the past.

Where the claimant's most recent favorable decision was based on meeting or equaling a Listing, an assessment of the residual functional capacity would not have been made. *Id.* § 404.1594(c)(3)(i). If a Listing is no longer met or equaled, then the ALJ will find that medical improvement is related to the ability to work. *Id.* Where an assessment of residual functional capacity was made at the most recent favorable decision, the ALJ will compare that assessment with the residual functional capacity assessment based on current evidence. *Id.* § 404.1594(c)(3)(ii). Where an assessment of residual functional capacity should have been made at the most recent favorable decision (i.e. because the impairments did not meet or equal a Listing), but was not, the ALJ will reconstruct the residual functional capacity. *Id.* § 404.1594(c)(3)(iii).

If the claimant can still do work the claimant has done in the past, the disability will be found to have ended. If the claimant cannot, the analysis advances to step eight. *Id.* § 404.1594(f)(7).

(8) Given the claimant's residual functional capacity, age, education, and past work experience, is the claimant able to do other work in the national economy? If so, the

claimant's disability will be found to have ended. If not, the claimant will be found to continue to be disabled. *Id.* § 404.1594(f)(8).

## ALJ DECISION

In determining plaintiff's continuing disability status, the ALJ applied the eight-step analysis in accordance with 20 C.F.R. § 404.1594. AR 23-31. At step one, the ALJ determined that plaintiff did not engage in substantial gainful activity through July 1, 2009. *Id.* at 24. At the second step, the ALJ found that the medical evidence established that plaintiff had the medically determinable impairment of supraventricular tachycardia ("SVT") as of July 1, 2009, and that since that date, plaintiff "did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." *Id*. As of July 1, 2009, the ALJ found that, "[c]onsidered individually and in combination, the claimant's impairments . . . did not meet or medically equal a listing." *Id.*

At step three, the ALJ found that medical improvement had occurred as of July 1, 2009. *Id.* at 24-25. At step four, the ALJ found that plaintiff's "medical improvement is related to the ability to work because, as of July 1, 2009, the claimant's CPD [Comparison Point Decision[2]] impairments no longer met or medically equaled the same listing that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i))." *Id*. at 25. Because of this finding at step four, the ALJ did not need to address step five. *See* 20 C.F.R. § 404.1594(f)(4).

At step six, the ALJ found that "[a]s of July 1, 2009, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)" as to her impairment of SVT. AR 25. As to plaintiff's fibromyalgia and complaints of bodily pain, the ALJ stated, "while the claimant may have fibromyalgia or chronic pain syndrome, there is no evidence that it

---

[2] The Comparison Point Decision ("CPD") as used here is the date of "the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." *See* 20 C.F.R. § 404.1594(b)(1). The ALJ determined and the parties agree that the CPD in this case is October 30, 2006, the date that plaintiff was most recently found to have a continuing disability. *See* AR 506.

is more than minimally limiting; it is thus a non-severe impairment. Based on the unremarkable musculoskeletal physical examination findings, I also conclude that the claimant's alleged neck pain and back pain are non-severe." *Id*. In so finding, the ALJ rejected consultative internist Dr. Farah Rana's February 2012 diagnosis of fibromyalgia with multiple tender points. *Id*. The ALJ also found that plaintiff's "depressive disorder, not otherwise specified (NOS), diagnosed at the February 2012 consultative psychiatric evaluation [did] not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and is thus nonsevere." *Id*. The ALJ came to these conclusions after assessing the four broad functional areas described in the disability regulations and based on the assessment of the "State agency psychological consultants." *Id.* at 26. ALJ Blume also gave great weight to the February 2012 opinion of consultative psychiatric examiner Dr. Arudra Bodepudi, finding the opinion to be "the most complete and detailed psychiatric evaluation in the record and . . . consistent with the overall evidence." *Id*.

At step seven of the continuing disability review, the ALJ found that plaintiff "had the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels," but that "she should not be exposed to unprotected heights or hazards such as moving machinery." *Id.* at 27. Following the two-step process described at 20 C.F.R. § 404.1529, the ALJ found that plaintiff met step one in that her "medically determinable impairments could reasonably have been expected to produce the alleged symptoms . . . ." *Id.* at 27-28. However, the ALJ found at the second step that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." *Id*. at 28. ALJ Blume accorded great weight to the opinion of medical expert Dr. Mitchell Collman, who testified at the hearing, and no weight to the opinion of consultative examiner Dr. Rana nor to the March and July 2012 opinions of State agency medical consultants Dr. Beverly Morgan and Dr. L. Pancho. *Id.* at 29. In continuing the step seven analysis, the ALJ found that plaintiff had no past relevant work because "she has not worked at the substantial gainful activity level in the last 15 years." *Id*. at 30.

At step eight, the ALJ found that as of July 1, 2009, plaintiff "was able to perform a

significant number of jobs in the national economy . . . ." *Id.* Thus, the ALJ found, her disability ended as of July 1, 2009. *Id.* at 31. This finding was based on plaintiff's residual functional capacity; her age as of July 1, 2009; the fact that plaintiff had at least a high school diploma and could communicate in English; and that because she had no past relevant work, she had no transferable skills. *Id.* at 30. According to the ALJ, though plaintiff's "ability to perform work at all exertional levels had been compromised by nonexertional limitations" as of July 1, 2009, "these limitations had little or no effect on the occupational based of unskilled work at all exertional levels." *Id.* at 31.[3][4]

## DISCUSSION

Plaintiff urges that the ALJ's decision must be vacated and plaintiff's claim remanded. Plaintiff argues that ALJ Blume "erred in finding medical improvement because he failed to compare medical evidence from the CPD with current medical evidence." Pl.'s Mot. at 11. Plaintiff also alleges that ALJ Blume erred when he discredited plaintiff's testimony regarding the severity of her symptoms. *Id.*

## I. Comparison of Medical Evidence from CPD with Current Medical Evidence

Plaintiff alleges that ALJ Blume erred at step three of the continuing disability review, where the ALJ found medical improvement. Pl.'s Mot. at 15. Defendant asserts that ALJ Blume evaluated the CPD and current medical evidence, and "properly found [that the current medical evidence] substantiated that there was a decrease in the severity of Plaintiff's mental impairments, which was evidence of medical improvement." Def.'s Cross-Mot. at 5.

The regulations define "medical improvement" as:

---

[3] The ALJ found plaintiff not disabled under section 204.00 of the Medical-Vocational Guidelines. AR 30-31. In a footnote, the ALJ noted that "[e]ven if the claimant were limited to medium exertional work, a finding of 'not disabled' would be appropriate under the framework of sections 203.14 and 203.21 in the Medical-Vocational Guidelines." *Id.* at 31.

[4] A Vocational Expert ("VE") also testified at the hearing, though the ALJ did not refer to the VE's testimony in his written decision. *See* AR 19-31.

8

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) (see § 404.1528).

20 C.F.R. § 404.1594(b)(1); *see also id.* § 404.1594(c)(1) ("Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s).").

Although the Ninth Circuit has not addressed how the ALJ must perform this comparison, "appellate decisions of other Circuit Courts support the conclusion that in assessing medical improvement the administrative law judge must evaluate not only the current medical evidence, but also the medical evidence upon which the claimant's original disabled status was premised." *Lee v. Astrue*, No. 10-CV-03162-KJN, 2012 WL 928741, at *5 (E.D. Cal. Mar. 19, 2012) (citing *Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir. 1984); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)); *see also Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002) (finding that the ALJ could not have compared the medical evidence at the time of the CPD with the current medical evidence, where the record was devoid of the medical evidence upon which the last favorable disability decision was made).

Addressing a similar allegation of error in another case, last year Magistrate Judge Ryu of this district granted a disability claimant's summary judgment motion, where the ALJ failed to compare prior to current medical evidence. *Medina*, 2015 WL 5448498, at *12. Judge Ryu agreed with the decisions of other Circuit Courts "that the plain language of 20 C.F.R. §§ 404.1594(b)(1) and (c)(1) requires the ALJ to actually compare prior and subsequent medical records in order to determine the existence of medical improvement." *See id.* at *11. In that case, the ALJ "appear[ed] not to have considered prior medical evidence at all, since those prior records [did] not appear in the administrative record submitted by the Commissioner to [the] court." *Id.*

This case differs slightly, in that the administrative record does contain the medical records upon which plaintiff's favorable determination at the October 2006 CPD was based.

9

Nevertheless, ALJ Blume's decision does not indicate that he considered these records in finding medical improvement. The ALJ's findings on step three read in full:

> The medical evidence supports a finding that, as of July 1, 2009, there had been a decrease in medical severity of the impairments present at the time of the CPD. As discussed below, the medical evidence of record indicates that the claimant's depression has improved and that she has no more than mild limitations in any of the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1). The medical evidence since the cessation date indicates that the claimant has not received any mental health treatment and has not been taking any psychiatric medications. Medical improvement is any decrease in the medical severity of the impairment that was present at the time of the CPD. I conclude that medical improvement occurred as of the cessation date.

AR 24-25.

The Court finds that the ALJ committed legal error at step three in several ways. Most importantly, the ALJ's decision cited to no medical evidence that pre-dated the October 2006 CPD. Though the ALJ stated that the medical evidence shows that plaintiff's depression had improved so as to no longer meet Listing 12.04, the ALJ never actually cited any of the CPD medical records from 2006 and before.[5] Thus, the ALJ could not have found that any decrease in the medical severity of plaintiff's impairments were "based on *changes (improvements)* in the symptoms, signs and/or laboratory findings associated with [her] impairment(s)." *See* 20 C.F.R. § 404.1594(b)(1) (emphasis added).

Additionally, the ALJ at step three addressed only the plaintiff's depression, where her initial disability finding was based on depression and physical pain. AR 22, 491. The ALJ made no mention of plaintiff's physical pain/fibromyalgia when he determined whether medical improvement occurred at step three of the continuing disability analysis. The medical records used at the CPD are contained in the administrative record, and they show that at that time, plaintiff was suffering from chronic pain/fibromyalgia. *See, e.g.,* AR 782 (Apr. 27, 2005), 783 (undated), 788-89 (Oct. 13, 2005), 790-71 (Feb. 12, 2006), 792 (Feb. 18, 2006), 795-96 (Apr. 26, 2006). The ALJ cited to none of these records in finding medical improvement.

---

[5] A finding that a claimant no longer meets a listing does not automatically mean that the claimant is no longer entitled to benefits. Step two asks whether the claimant has "an impairment or combination of impairments" that meet a listing. If the answer is "no," the inquiry does not cease; rather, the ALJ simply proceeds to step three. *See* 20 C.F.R. § 404.1594(f)(2), (3).

1    As Judge Ryu found in *Medina*, this error is not harmless. The regulations dictate that "an ALJ may not move to the evaluation of a claimant's RFC without first finding medical improvement, and the Act does not authorize an ALJ to find medical improvement without making the comparison of prior and current medical evidence." *Medina*, 2015 WL 5448498, at *12.

## II. Plaintiff's Discredited Testimony

Plaintiff argues that ALJ Blume erred by finding her hearing testimony as to the severity of her symptoms not credible. Pl.'s Mot. at 15. Defendant contends that ALJ Blume "noted that there were significant inconsistencies in the record that diminished Plaintiff's credibility." Def.'s Cross-Mot. at 11. Defendant further argues that "[t]he ALJ's credibility findings are entitled to deference and . . . the ALJ's finding is supported by substantial evidence notwithstanding Plaintiff's disagreement." *Id*. at 12. Here, defendant's reliance on the "substantial evidence" standard is misplaced.[6]

An ALJ must engage in a two-step analysis to evaluate the credibility of a claimant regarding subjective symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

---

[6] Indeed, defendant recognizes that the Ninth Circuit applies the clear and convincing reasons standard in this context, as discussed *infra*. *See* Def.'s Cross-Mot at 11, n.4.

The ALJ "may find the claimant's allegations of severity to be not credible" but "must specifically make findings which support this conclusion." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In other words, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell*, 947 F.2d at 345-46 (internal quotation marks and citation omitted). The ALJ may consider inconsistencies between a claimant's testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, ALJ Blume found that plaintiff's "medically determinable impairments could reasonably have been expected to produce the alleged symptoms." AR 28. Thus, the ALJ found that plaintiff met the first step of the credibility test. *See Lingenfelter*, 504 F.3d at 1036. However, ALJ Blume went on to state that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." *Id.*

The ALJ stated that "it appears that [plaintiff] exaggerates her limitations" because: (1) though plaintiff testified at the hearing "that she can only walk 1 to 3 blocks at a time, she told her treating orthopedist in July 2013, three months after suffering a right ankle fracture, that she could walk 30 minutes at a time and go up and down stairs"; (2) though plaintiff "testified that she can sit for only 15 minutes, . . . she [also] testified that she drives her children to and from school, 20 to 30 minutes one way"; (3) if plaintiff's "SVT were as troublesome as she portrays it, she would have gotten an ablation"; and (4) "as the primary caregiver for her children, I assume that she is more active than she admits." AR 30.

The only statement that can arguably be construed as "inconsistent" is the first statement, and the Court does not find this to be a clear and convincing reason to discredit plaintiff's testimony. Plaintiff notes that "[t]hese are not conflicting representations . . . (one is time, one is

12

distance).” Pl.'s Resp. at 2 n.2. As for the second statement, the Court finds that the ALJ mischaracterized plaintiff's testimony regarding her ability to sit. At the hearing, the ALJ asked, "How long can you usually sit before you need to stand?" Plaintiff answered, "Sometimes about 15 minutes. And then, like now, I'm kind of uncomfortable and I need to stand." AR 1047. Plaintiff did not state that she could always sit for only 15 minutes, nor did she say that sitting longer than that was physically impossible. This testimony is not inconsistent with testimony that she drives her children to and from school each day. *See Garrison*, 759 F.3d at 1015-16 (finding error in ALJ's mischaracterization of claimant's statements).

As to the third statement, the Court does not find plaintiff's failure to get an ablation to be a clear and convincing reason that her testimony regarding her SVT is not credible. At the hearing, the ALJ asked why plaintiff did not want ablation of her heart. AR 1045. Plaintiff replied that she was on Coumadin because of her history of blood clots. *Id.* She also expressed fear of the procedure because: "I have kids that are fairly young, I don't want any repercussions where if something happens, you know, and I'm not around to see them." *Id.* Dr. Collman, a nonexamining medical expert, later testified at the hearing that plaintiff's concern regarding the effects of Coumadin during the procedure "are not founded because Coumadin is just stopped for the purpose of the procedure." *Id.* at 1052. However, there is no evidence that plaintiff knew this to be the case, and the ALJ did not ask follow up questions to determine how plaintiff came by her understanding of the risks of an ablation.

As to the fourth statement — the ALJ's assumption about plaintiff's capacity given her status as primary caregiver — the Ninth Circuit has warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *See Garrison*, 759 F.3d at 1016. In *Garrison*, the Ninth Circuit found that the claimant's daily activities

> were consistent with her statements about the impairments caused by her pain. The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent with the pain that Garrison described in her testimony. It is

13

> also consistent with an inability to function in a workplace environment. Accordingly, the supposed inconsistencies between Garrison's daily activities and her testimony do not satisfy the requirement of a clear, convincing, and specific reason to discredit Garrison's testimony regarding her pain-related impairments.

*Id.* at 1016.

Here, plaintiff testified that after dropping off her daughters at school she "usually just sit[s] around and wait[s] on them" and, when she can, sleeps for four or five hours a day. AR 1047-48. She further testified that she has an older son who helps her with chores such as laundry and grocery shopping. *Id.* at 1048; *see also* AR 730-31 (in a function report dated December 28, 2011, plaintiff made statements as to the help she receives from her children). When asked if she cooks, she answered that she cooks "[l]ight things. Things I can do in the microwave." *Id.*; *see also* AR 730-31 (similar statements regarding usage of the microwave in preparing food). The ALJ effectively penalized plaintiff for being a primary caregiver to her two daughters. Such reasoning by no means rises to the level of clear and convincing. Indeed, the ALJ admitted that he was making an assumption about plaintiff: "as the primary caregiver for her children, I assume that she is more active than she admits." *See* AR 30. The ALJ did not provide any explanation of how plaintiff's role as a primary caregiver contradicts her pain testimony. In fact, these limited activities, punctuated by rest breaks, are consistent with plaintiff's allegation that she is unable to sustain any substantial gainful activity. This factor thus provides insufficient reason to reject plaintiff's testimony. *See Garrison*, 758 F.3d at 1015-16.

### III. ALJ Finding Regarding Residual Functional Capacity Determination

In her response brief, plaintiff's argument focuses not on step three of the ALJ's decision, but on step seven.[7] In addition to arguing that the ALJ was required to compare medical evidence from the 2006 CPD with current medical evidence at step three, plaintiff alleges that ALJ Blume was required to compare plaintiff's residual functional capacity ("RFC") at the 2006 CPD with plaintiff's current RFC. Pl.'s Mot. at 1; Pl.'s Resp. at 1. Defendant contends that the ALJ was not

---

[7] Although plaintiff does not expressly state that she is attacking the ALJ's decision at step seven, the Court infers this because step seven is where the ALJ is to evaluate residual functional capacity. *See* 20 C.F.R. § 404.1594(f)(7).

required to make an RFC determination for the 2006 decision because at that time plaintiff met a Listing, so such a determination would not have been made, pursuant to 20 C.F.R. § 404.1594(c)(3)(i). Def.'s Cross-Mot. at 8-9.

Defendant is correct. The regulations state that where the most recent favorable decision was based on the claimant's impairments meeting or equaling a Listing, an assessment of the claimant's RFC would not have been made. 20 C.F.R. § 404.1594(c)(3)(i). The regulations therefore provide for an alternative method for determining whether medical improvement has occurred and whether it is related to the claimant's ability to work. *See id.* By contrast, where an assessment of RFC *was* used in making the most recent favorable decision, the ALJ will compare that RFC assessment with the RFC assessment based on current evidence. *Id.* § 404.1594(c)(3)(ii). Alternatively, where an assessment of RFC was not made at the most recent favorable decision but where it should have been made, "(i.e. [because the] impairments did not meet or equal the level of severity contemplated by the Listing of Impairments . . .)[,]" then the ALJ shall "reconstruct the residual functional capacity." *Id.* § 404.1594(c)(3)(iii).

Nowhere in § 404.1594 is the rule plaintiff wants the Court to approve stated, that where a claimant previously met a Listing, an ALJ on continuing disability review must reconstruct the claimant's RFC at the comparison point decision and compare it to the current RFC. Here, the 2006 point of comparison decision found that plaintiff met the Listing for 12.04, and so falls squarely within 20 C.F.R. § 404.1594(c)(3)(i); *see also Anderson v. Astrue*, No. 07-1505 AJW, 2008 WL 4500882, at *4 n.3 (C.D. Cal. Oct. 6, 2008). Therefore, the ALJ did not err by not making a retroactive RFC finding to compare to the current RFC.

### IV. Other Arguments

Plaintiff also raises additional arguments that she does not brief. She argues that "substantial evidence does not support the conclusion that there are a significant number of jobs available that Plaintiff could perform (had her RFC been properly determined)." Pl.'s Mot. at 11. She also alleges that "substantial evidence does not support a finding of medical improvement in her back, fibromyalgia and SVT problems." *Id.* Because the Court finds that the ALJ committed

1  legal error at step three regarding medical improvement, § I, *supra*, it need not reach the questions of whether medical improvement was also supported by substantial evidence, or of whether the ALJ committed error at step eight.

### V.     Additional Relief Sought

In addition to an order vacating the ALJ's decision and remanding this case, plaintiff seeks reinstatement of benefits pending rehearing,[8] an "order that the Commissioner certify, withhold from Plaintiff and pay directly to counsel of record herein within 120 days of Judgment an amount equal to 25 percent of total past-due benefits[,]" and a finding "entitling Plaintiff to an award of fees under the Equal Access to Justice Act[.]" Pl.'s Not. of Mot. at 1-2; Pl.'s Mot. at 15.

The cases that plaintiff cites in support of her request for reinstatement of benefits pending rehearing are inapplicable here. *See* Pl.'s Not. of Mot. at 1 (citing *Gomaz v. Heckler*, 591 F. Supp. 1122 (E.D. Wis. 1984); *LaBonne v. Heckler*, 574 F. Supp. 1016 (D. Minn. 1983)). Both the *LaBonne* and *Gomaz* decisions involved agency-wide delays in processing Social Security benefits applications following an "unprecedented flood of cases" in the 1980's. *See Gomaz*, 591 F. Supp. at 1127; *LaBonne*, 574 F. Supp. at 1020. The courts there awarded interim benefits as "the only appropriate remedy in this situation." *Gomaz*, 591 F. Supp. at 1127 ("While this Court alone cannot remedy what has plainly become a significant problem for courts across the nation, it can and will follow the example set by Judge Lord in *LaBonne* by awarding interim benefits in this case . . ."); *LaBonne*, 574 F. Supp. at 1020. Although the Court is sympathetic that several years have passed while plaintiff appealed ALJ Blume's decision, the Court declines to follow the example of *LaBonne* and *Gomaz* under the present circumstances and will not order payment of

---

[8] Although plaintiff's motion repeatedly seeks remand for rehearing, she asks at one point for remand "solely for payment of benefits," should the Court "credit[] as true Dr. Rana's medical source testimony and Ms. Van Zutphen's impairment testimony . . . ." *See* Pl.'s Mot. at 12. Plaintiff does not brief this argument further and, in any event, the Court finds that ALJ Blume based his rejection of Dr. Rana's opinion on "'specific and legitimate reasons' supported by substantial evidence in the record . . . ." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also Garrison*, 759 F.3d at 1012 ("An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'").

interim benefits pending rehearing.

Given that the Court is remanding for rehearing, it is premature for the Court to rule on any request for payment of attorney's fees under 42 U.S.C. § 406(b).  Should plaintiff ultimately succeed in obtaining an award of benefits, she may at that time apply to this Court for payment of § 406(b) attorney's fees.  However, the Court agrees with plaintiff that she is entitled at this stage to a finding that the Commissioner's position in this case—in defending on appeal the error of the ALJ at step three—was not substantially justified, making plaintiff potentially eligible for an award of attorney's fees under the Equal Access to Justice Act.  *See* 28 U.S.C. § 2412(d)(1)(A); *Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) ("Whether the claimant is ultimately found to be disabled or not, the government's position at each stage must be 'substantially justified.'").  Plaintiff therefore has thirty days from the entry of judgment in this case in which to file a claim for fees under the Equal Access to Justice Act.  *See Shalala v. Schaefer*, 509 U.S. 292, 297-98 (1993) (remand authorized by sentence four of 28 U.S.C. § 405(g) becomes a final judgment for purposes of the Equal Access to Justice Act upon expiration of the time for appeal).

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's opinion at step three was based on legal error and that the ALJ improperly discredited plaintiff's testimony.  Because the Court cannot make a disability determination from the record evidence, the case is REMANDED for further proceedings consistent with this opinion.  Accordingly, the Court GRANTS plaintiff's motion for remand and DENIES defendant's cross-motion for summary judgment.

**IT IS SO ORDERED**.

Dated:  September 26, 2016

_____
SUSAN ILLSTON
United States District Judge